## 2. Dismissal of Determan

In their second assignment of error, Appellants challenge the district court's decision to sustain Determan's motion to dismiss for failure to state a claim. Specifically, they argue that the court erred in its determination that Determan owed no duty to Appellants and thus was an improper party to a mandamus action.

[7] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Lindner v. Kindig*, 285 Neb. 386, 826 N.W.2d 868 (2013). Appellants' claim against Determan rested entirely on the presumption that after Determan initiated judicial foreclosure proceedings, they were still entitled to redeem their property in the manner prescribed by § 77-1824. For the reasons explained above, that presumption was erroneous. As a matter of law, once the foreclosure action was pending, Appellants could not redeem their property under § 77-1824. As such, Appellants' claim against Determan was not plausible on its face. The district court did not err in dismissing the complaint against Determan for failure to state a claim.

## VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court which entered summary judgment in favor of the Treasurer and sustained Determan's motion to dismiss for failure to state a claim.

Affirmed.

———————

Bruce R. Friedman, appellant, v.
Susan C. Friedman, appellee.
___ N.W.2d ___

Filed May 22, 2015.   No. S-14-710.

1. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

2. **Jurisdiction: Pleadings: Parties.** A party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party.

3. **Service of Process: Waiver.** A general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof.

4. **Due Process: Service of Process.** A general appearance waives any due process objection based on inadequate service of process.

5. **Foreign Judgments: Jurisdiction: Collateral Attack.** Under Neb. Rev. Stat. § 25-1587.03 (Reissue 2008) of the Uniform Enforcement of Foreign Judgments Act, collateral attacks on a final, foreign judgment are generally limited to claims that the judgment was void, such as for lack of jurisdiction over the person or the subject matter.

6. **Foreign Judgments: Records.** If the amount of a foreign judgment cannot be ascertained without resorting to facts outside the record of the foreign court, it cannot be registered under the Uniform Enforcement of Foreign Judgments Act.

7. **Divorce: Jurisdiction: Equity.** District courts in domestic dissolution actions retain equitable jurisdiction to determine amounts due under an ambiguous decree.

8. **Foreign Judgments.** The Uniform Enforcement of Foreign Judgments Act has no provision for modification or alteration of a foreign judgment, decree, or order.

9. **Judgments: Appeal and Error.** Whether a judgment is ambiguous is a question of law for which the appellate court has an obligation to reach a conclusion independent from the lower court's conclusion.

10. **Right to Counsel: Effectiveness of Counsel.** A pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel.

11. **Effectiveness of Counsel: Appeal and Error.** Pro se litigants, like any other, may not present issues, arguments, and theories for the first time on appeal.

12. **Appeal and Error.** A lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

13. **Rules of the Supreme Court: Appeal and Error.** Under Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), a party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed.

Bruce R. Friedman, pro se.

Karl Von Oldenburg, of Brumbaugh & Quandahl, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

The ex-husband appeals from an order generally overruling his objections to garnishment upon a foreign dissolution decree. The ex-husband asserts that he was not properly notified of the registration of the foreign judgment or of the garnishment, that the court should have declared the amount of the foreign judgment to be lower than what was sought by his ex-wife, and that the court inadequately addressed the percentage of his wages that should be garnished. We affirm.

## BACKGROUND

On May 7, 2014, Susan Roggentine, also known as Susan C. Friedman (Roggentine), filed in the district court for Douglas County an affidavit for registration of a foreign judgment. According to the affidavit, Roggentine sought to enforce a total of $160,458.49 awarded in a Colorado dissolution decree against her ex-husband, Bruce R. Friedman. According to the affidavit, the award consisted of $145,243.49, plus $15,215 in court-awarded attorney fees, for a total of $160,458.49.

A certified copy of the decree, dated October 26, 2011, was attached to the affidavit. In the decree, the Colorado court ordered that Friedman pay Roggentine $100,000 in the division of assets and deliver to Roggentine described items of personal property and the title to specified vehicles. The court ordered that Friedman reimburse Roggentine for $45,243.49 that Friedman induced Roggentine to withdraw from her individual retirement account to pay Friedman's nondischargeable debts. The court awarded spousal maintenance in the amount of $2,000 per month for 12 months, but found that Friedman's default on $10,399 in temporary maintenance obligations justified that maintenance be awarded in a lump sum of $34,399. The court ordered Friedman to pay $15,215 in attorney fees and $850 in costs.

In the conclusion of the order, the Colorado court entered judgment in favor of Roggentine in the amount of $34,399, as

of November 1, 2011. The court further ordered Friedman to pay Roggentine $145,243.49 in cash or certified funds within 30 days of the court's order and ordered Friedman to pay the balance of attorney fees in the amount of $15,215 and costs of $850. Mathematically, these listed sums total $195,707.49. The order itself does not purport to set forth a total summation of the various amounts awarded.

The affidavit in support of registration of the foreign judgment set forth as Friedman's last known address the correct house number corresponding to the address where he lived, but the street number stated 188th Street. Friedman actually lived on 118th Street. Accordingly, subsequent to the filing of the foreign judgment, the clerk of the court sent notice to the incorrect address. The notice was returned as undeliverable.

On June 20, 2014, Roggentine filed an affidavit and praecipe for summons in garnishment after judgment. This listed Friedman's correct address and stated that the amount due on the judgment was $160,458.49, plus costs in the amount of $101.12, for a total of $160,559.61. The affidavit set forth that Friedman was not the head of a family for purposes of the percentage of disposable earnings subject to garnishment under Neb. Rev. Stat. § 25-1558 (Reissue 2008).

Roggentine asked that the summons in garnishment be issued by certified mail to Friedman's employer. Friedman's employer received the summons and order of garnishment in aid of execution on June 30, 2014. Although the summons/garnishment order lists the incorrect 188th Street address for Friedman, the certified mail receipts found in the transcript appear to show that it was sent to Friedman via certified mail to the correct address. The record does not reflect Friedman's receipt of that mailing, however.

On July 11, 2014, Friedman filed in the district court a pro se "Ex-Parte Motion to Quash," "Objection to Registration of Foreign Judgment," and "Objection to Garnishment." In the motion, Friedman alleged that he never received notice of the filing of the foreign judgment or of the garnishment until notified by his employer's payroll processor "via regular

postal mail" on July 7, 2013. Friedman alleged he was therefore "neglected of his opportunity" to object to the judgment Roggentine was attempting to register and to object to the garnishment of his wages.

In the motion, Friedman requested a hearing to challenge the allegation that he was not the head of a family for purposes of the garnishment calculation. Friedman also asked that the court quash the garnishment on the grounds that Roggentine had failed to (1) notify the clerk of his proper address when filing the foreign judgment, (2) mail the notice of the garnishment by certified mail to his correct address, and (3) certify to the court that she had complied with Neb. Rev. Stat. § 25-1011 (Cum. Supp. 2014).

Friedman received a hearing on his motion on July 18, 2014. At the hearing, Friedman first complained of the lack of notice and proper service of process. He argued in this regard that Roggentine could not garnish his wages, because she had failed to satisfy the statutory notice requirements. He also indicated his belief that Roggentine had purposefully provided the wrong address.

Second, Friedman challenged the amount of the foreign judgment that was registered, and which served as the basis for the garnishment. Friedman claimed he was obligated to pay only $149,000 under the foreign order. However, Friedman admitted he had made no payments to Roggentine pursuant to that order. Friedman also indicated that the order had been affirmed on appeal.

On this second point, the court—apparently adding up only the amounts awarded on the last page of its conclusion—stated that the order plainly totaled $160,000. Friedman admitted that was "what it says at the bottom of the document." The court responded that because the award was affirmed on appeal, "that's what you're stuck with."

Finally, Friedman explained the reasons he ought to be considered head of a family for purposes of any garnishment. Roggentine's counsel responded that Roggentine did not object to Friedman's being considered head of a family.

There was no indication at the hearing that Friedman had as of that time received a garnished paycheck. Friedman claims in his appellate brief that he had one paycheck garnished on July 14, 2014, at the non-head-of-a-family rate of 25 percent.[1] Neither party offered any exhibits at the hearing.

On August 5, 2014, the court issued the following order: "The Court finds that [Friedman's] objection to the registration of a foreign document and objection to garnishment should be overruled and denied. The Court further finds that [Friedman] is the head of a household." That same date, the court issued an order for continuing lien, which was sent to Friedman's employer. The order stated that "there is not successful objection to garnishment filed." The order for continuing lien does not specify whether Friedman is head of a family. Friedman indicates in his appellate brief that since the August 5 order, his paycheck has been garnished at the maximum head-of-family rate of 15 percent.[2] Friedman appeals.

## ASSIGNMENTS OF ERROR

Friedman assigns that the court erred in (1) denying and overruling his objection to the registration of the foreign judgment on the basis that the amount was incorrect, (2) failing to enter a declaratory judgment setting forth the correct amount of the foreign judgment, (3) overruling and denying his objection to the registration of the foreign judgment on the grounds that he was denied notice and due process in relation to the registration of the judgment, (4) allowing a garnishment to proceed when there was no validly registered judgment, (5) overruling and denying his objection to the garnishment and not quashing the garnishment for lack of proper service and on the grounds that he was denied due process and the right to be heard prior to the garnishment of his wages, (6) allowing the garnishment at the maximum allowable level, and (7) failing to rectify the initial amount garnished at the "'not head of household'" level.

---

[1] See § 25-1558(1)(a).

[2] See § 25-1558(1)(c).

## STANDARD OF REVIEW

[1] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[3]

## ANALYSIS

### Notice

Friedman first argues that the garnishment order should have been set aside, because Roggentine failed to comply with the notice requirements of the statutes governing registration of foreign judgments and garnishments. He relatedly asserts that he was denied due process of law, arguing he was denied an opportunity to be heard on the issue of registering the Colorado judgment and on the amount of the garnishment.

Neb. Rev. Stat. § 25-1587.04 (Reissue 2008), of the Nebraska Uniform Enforcement of Foreign Judgments Act,[4] states that at the time of the filing of the foreign judgment, the judgment creditor or his or her lawyer shall make and file with the clerk of the court an affidavit setting forth the name and last-known post office address of the judgment debtor. The clerk of the court shall thereafter mail notice of the foreign judgment to the judgment debtor at the address given.

Section 25-1011(1), of the attachment and garnishment statutes, states that the summons and order of garnishment and the interrogatories in duplicate, a notice to judgment debtor form, and a request for hearing form shall be served upon the garnishee in the manner provided for service of a summons in a civil action.

Neb. Rev. Stat. § 25-516.01(1) (Reissue 2008) pertains to service of a summons in a civil action. As relevant here, § 25-516.01(1) states that "[t]he voluntary appearance of the party is equivalent to service." Section 25-516.01(2) elaborates that participation in the proceedings on any issue other than the defenses of lack of jurisdiction over the person,

---

[3] *Gammel v. Gammel*, 259 Neb. 738, 612 N.W.2d 207 (2000).

[4] Neb. Rev. Stat. §§ 25-1587.01 to 25-1587.09 (Reissue 2008).

insufficiency of process, or insufficiency of services of process, waives all such issues except as to the objection that the party is not amenable to process issued by a court of this state.

[2,3] We have summarized that a party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party.[5] And a general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof.[6]

In his motion and appearance before the lower court at the July 18, 2014, hearing, Friedman did not simply argue that Roggentine failed to properly serve him notice of the registration of the judgment and garnishment. He also argued that the amount of the garnishment was incorrect.

[4] Friedman participated in the proceedings on issues other than the defenses listed under § 25-516.01(2): lack of jurisdiction over the person, insufficiency of process, or insufficiency of services of process. Friedman thus made a general appearance and waived his objections to the statutory provisions relating to jurisdiction over his person.[7] By making a general appearance, Friedman also waived any due process objection based on the inadequate service of process.[8]

## Uncertainty of Amount

Friedman alternatively argues that the amount of the Colorado judgment was so uncertain as to be unenforceable. He argues that such unenforceability opened the door to a

---

[5] See, *Hunt v. Trackwell*, 262 Neb. 688, 635 N.W.2d 106 (2001); *Glass v. Nebraska Dept. of Motor Vehicles*, 248 Neb. 501, 536 N.W.2d 344 (1995); *McKillip v. Harvey*, 80 Neb. 264, 114 N.W. 155 (1907).

[6] *Harris v. Eberhardt*, 215 Neb. 240, 338 N.W.2d 53 (1983).

[7] See, *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702 (2004); *Harrold v. Spaghetti Tree, Inc.*, 219 Neb. 139, 362 N.W.2d 44 (1985); *Thornton v. Thornton*, 13 Neb. App. 912, 704 N.W.2d 243 (2005).

[8] See, *U.S. v. Vacant Land*, 15 F.3d 128 (9th Cir. 1993); *Nash v. Salter*, 280 Mich. App. 104, 760 N.W.2d 612 (2008); *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199 (Tex. 1985).

declaratory judgment action in the district court to decide the correct amount of the ambiguous Colorado judgment. He asserts that his July 11, 2014, filing should have been liberally construed as bringing such an action for declaratory relief and that the court should have determined the amount due was only $149,000. Leaving aside whether a declaratory judgment action was properly pled, we find no merit to these arguments.

[5] Under § 25-1587.03, a foreign judgment filed pursuant to the Nebraska Uniform Enforcement of Foreign Judgments Act is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of this state and may be enforced or satisfied in like manner. Collateral attacks on a final, foreign judgment are thus generally limited to claims that the judgment was void, such as for lack of jurisdiction over the person or the subject matter.[9]

[6] We indicated in *Cockle v. Cockle*[10] that a foreign judgment may be too uncertain to be enforceable under the Nebraska Uniform Enforcement of Foreign Judgments Act. The foreign judgment at issue in *Cockle* had awarded a percentage of future receipts, and therefore, the amount of the judgment could not be ascertained without resorting to facts outside the record of the foreign court.[11] We held that the judgment could not be registered.[12]

Our holding in *Cockle* is consistent with the general rule of law that a judgment must be sufficiently certain in its terms to be able to be enforced.[13] The judgment must be in such a form that a clerk is able to issue an execution upon it which an officer will be able to execute without requiring external proof and another hearing.[14] A judgment for money must

---

[9] See *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999). See, also, e.g., *Harvey v. Harvey*, 6 Neb. App. 524, 575 N.W.2d 167 (1998).

[10] *Cockle v. Cockle*, 204 Neb. 88, 281 N.W.2d 392 (1979).

[11] *Id*.

[12] *Id*.

[13] See *Lenz v. Lenz*, 222 Neb. 85, 382 N.W.2d 323 (1986).

[14] *Id*.

specify with definiteness and certainty the amount for which it is rendered.[15]

[7,8] We have also said that district courts in domestic dissolution actions retain equitable jurisdiction to determine amounts due under an ambiguous decree.[16] But we have never directly addressed whether such jurisdiction can be exercised over a foreign decree pursuant to the Nebraska Uniform Enforcement of Foreign Judgments Act. We have noted in other contexts that the Nebraska Uniform Enforcement of Foreign Judgments Act has no provision for modification or alteration of a foreign judgment, decree, or order.[17]

[9] We need not decide in this case whether a Nebraska court can determine amounts due under an ambiguous foreign dissolution decree, because the Colorado judgment was not ambiguous. Whether a judgment is ambiguous is a question of law for which the appellate court has an obligation to reach a conclusion independent from the lower court's conclusion.[18] Although the Colorado order is lengthy, when read carefully, it is not susceptible of two or more reasonable but conflicting interpretations.[19] The fact that Roggentine and the district court during the hearing apparently failed to add into their calculations the lump-sum maintenance award does not make the judgment ambiguous.

The district court did not err in failing to find the Colorado judgment ambiguous and declare the amount due was $149,000. Likewise, to the extent Friedman attempts to make a separate argument that the Colorado judgment is unenforceable because it cannot be executed without external proof and another hearing, we find no merit to this argument.

---

[15] *Id.*

[16] See, *Wilson v. Wilson*, 19 Neb. App. 103, 803 N.W.2d 520 (2011); *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006).

[17] See, *Marshall v. Marshall*, 240 Neb. 322, 482 N.W.2d 1 (1992); *Riedy v. Riedy*, 222 Neb. 310, 383 N.W.2d 742 (1986).

[18] See *Boyle v. Boyle*, 12 Neb. App. 681, 684 N.W.2d 49 (2004).

[19] See *id.*

## Head of Household/Maximum
## Garnishment

Lastly, Friedman argues that the lower court erred in setting the garnishment at the maximum statutory allowable level when his personal circumstances justified a more moderate garnishment. Furthermore, he argues that the court should have returned to him the amount of the garnishment that occurred at a non-head-of-a-family calculation in the paycheck he received a few days before the hearing.

Neither of these issues were properly presented to the lower court. Friedman never asked the court to remedy the garnishment that had already occurred under the erroneous determination that he was not head of a family, and he never suggested to the district court that the garnishment should be calculated differently for any reason other than the fact that he was head of a family.

[10-12] A pro se litigant will receive the same consideration as if he or she had been represented by an attorney,[20] and, concurrently, that litigant is held to the same standards as one who is represented by counsel.[21] Pro se litigants, like any other, may not present issues, arguments, and theories for the first time on appeal.[22] A lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[23]

We reject Friedman's claim that he failed to present these issues because the district court did not allow him to. Besides having the freedom to amend his motion, at one point at the hearing when Friedman asked the court if he could "add a couple of other things," the court responded, "Go ahead" and

---

[20] *Martin v. Martin*, 188 Neb. 393, 197 N.W.2d 388 (1972).

[21] See *Pope-Gonzalez v. Husker Concrete*, 21 Neb. App. 575, 842 N.W.2d 135 (2013).

[22] See, *Simmons v. Precast Haulers*, 288 Neb. 480, 849 N.W.2d 117 (2014); *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011). See, also, *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004); *Stone v. Harry*, 364 F.3d 912 (8th Cir. 2004); *Wolfe Elec., Inc. v. Duckworth*, 293 Kan. 375, 266 P.3d 516 (2011); *State v. McCall*, 754 N.W.2d 868 (Iowa App. 2008).

[23] See *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

"say whatever you want." While Friedman may have felt discouraged by the court's attitude toward his arguments, there is no evidence in the record that he was precluded from presenting to the court any theory or evidence he wished to present.

The district court did not err in failing to award the alleged improperly calculated garnishment or in failing to consider factors other than Friedman's head-of-household status, because Friedman did not present those issues to the district court.

### Cross-Appeal

Roggentine sets forth in her brief a "Cross Assignment of Error," asking that we correct the lower court's order to reflect the correct amount of the Colorado judgment, $195,707.49. Roggentine concedes that neither Roggentine's affidavit for registration of foreign judgment nor her affidavit and praecipe for summons in garnishment sets forth the correct amount of the Colorado judgment and that she did not raise this issue in the hearing below.

[13] Under Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), a party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant.[24] Thus, the cross-appeal section must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of facts.[25]

There is no designation of a cross-appeal on the cover of Roggentine's brief, nor is a cross-appeal set forth in a separate division of the brief as required by our court rules. Therefore, we do not consider the merits of Roggentine's purported cross-appeal.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.

---

[24] See *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009).

[25] *Id.*