Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/10/2016 09:09 AM CDT

WESTON D. DERBY, APPELLEE AND
CROSS-APPELLANT, V. STEPHANIE
R. MARTINEZ, APPELLANT
AND CROSS-APPELLEE.

___ N.W.2d ___

Filed May 10, 2016.    No. A-15-336.

1. **Paternity: Appeal and Error.** In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

2. **Child Custody.** To prevail on a motion to remove a minor child, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her.

3. **Child Custody: Visitation.** Nebraska's removal jurisprudence does not apply to a child born out of wedlock where there has been no prior adjudication addressing child custody or parenting time. However, it is appropriate for a court to give some consideration to the factors described in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), in determining custody based on the children's best interests.

4. **Child Custody.** Legitimate employment opportunities for a custodial parent may constitute a legitimate reason for leaving the state.

5. ____. Legitimate employment opportunities may constitute a legitimate reason where there is a reasonable expectation of improvement in the career or occupation of the custodial parent, or where the custodial parent's new job includes increased potential for salary advancement.

6. ____. A firm offer of employment in another state with a flexible schedule in close proximity to the custodial parent's extended family constitutes a legitimate reason for relocation.

7. **Child Custody: Visitation.** Under *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), the trial court evaluates three considerations in determining whether removal to another jurisdiction is in the child's best interests: (1) each parent's motives for seeking or opposing the move, (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent, and (3) the impact such a move will have on contact between the child and the noncustodial parent.

8. **Child Custody.** In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the child and the parent seeking removal, a court should consider the following factors: (1) the emotional, physical, and developmental needs of the child; (2) the child's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the child and each parent; (7) the strength of the child's ties to the present community and extended family there; (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties; and (9) the living conditions and employment opportunities for the custodial parent, because the best interests of the child are interwoven with the well-being of the custodial parent.

9. **Child Custody: Visitation.** Absent some aggravating circumstances, such as an ulterior motive to frustrate the noncustodial parent's visitation rights, significant career advancement is a legitimate motive in and of itself.

10. **Rules of the Supreme Court: Appeal and Error.** Under Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), a party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant.

11. ____: ____. To comply with Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), a cross-appeal section must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of facts.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Reversed and remanded with directions.

Jeff T. Courtney, P.C., L.L.O., for appellant.

Carol Pinard Cronin for appellee.

Irwin, Pirtle, and Riedmann, Judges.

Pirtle, Judge.

## INTRODUCTION

Stephanie R. Martinez (Stephanie) appeals from an order of the district court for Douglas County finding that Weston D. Derby is the biological father of Harrison Jude Derby and awarding Stephanie custody of Harrison but denying her request to remove him from Nebraska to Texas. Based on the reasons that follow, we reverse, and remand with directions.

## BACKGROUND

Stephanie and Weston started dating in 2011, but were never married. Stephanie gave birth to Harrison in July 2013. The parties' relationship ended in January 2014. On April 3, 2014, Weston filed an amended complaint to establish paternity, custody, parenting time, and related issues. Weston sought sole custody of Harrison or, in the alternative, joint physical custody. Stephanie filed an amended answer and amended countercomplaint in which she sought sole custody of Harrison and permission to "leave the jurisdiction with" Harrison.

Trial was held in March 2015. Weston testified that he is self-employed as a stonemason, which involves building and restoring items such as outdoor fireplaces, patios, building entrances, pillars, and chimneys. He testified that he does not have a set work schedule and works as much as he can.

Weston testified that he was raised in Omaha, Nebraska. His mother lives in Omaha, as well as two of his siblings and their children. Weston has another son, who was 7 years old at the time of trial. He testified that he has parenting time with his older son on a regular basis and has a good relationship with that son's mother. There was also evidence that Weston's older son and Harrison get along well with each other.

Weston testified that he was present for Harrison's birth and that although the parties kept separate residences, he has helped out with Harrison since his birth. He testified that in January 2014, Stephanie cut off his contact with Harrison, which led him to file his amended complaint. After a temporary order was entered giving him set parenting time, he had regular contact with Harrison. He testified that after the temporary order was entered, he and Stephanie were getting along with each other. He would bring food over to her house, purchase clothing and diapers for Harrison, and help Stephanie out around her house. Between April and November 2014, he did various repair and improvement work on her house. He also did work on Stephanie's parents' house.

At the time of trial, Weston was living in a two-bedroom, two-bathroom house owned by a friend. Weston had been fixing up and renovating the home in lieu of rent. Weston planned to eventually buy the home.

Weston testified that in November 2014, Stephanie's father told him that he and his wife, Stephanie's mother, were thinking about buying a dog kennel business in Colorado and wanted Stephanie and Harrison to move with them. Weston told him that he did not want Harrison to move. The matter was brought up a short time later, and Weston again indicated he would not agree to Harrison's moving out of state. Stephanie subsequently cut off Weston's contact with Harrison. She also obtained an ex parte harassment protection order against Weston on November 25 which was subsequently ordered to remain in effect for 1 year and, thus, was still in effect at the time of trial. At the end of December 2014, Stephanie began allowing Weston his court-ordered parenting time again, which continued up to the time of trial. Weston testified that sometime between December 2014 and March 2015, he learned that Stephanie's parents planned to move to Weatherford, Texas, and that Stephanie wanted to move with them and take Harrison with her.

Stephanie's father testified that he had worked for an electric utility company for over 24 years and was going to retire in April 2015. He testified that he wanted to own a dog kennel business and had located one in Weatherford that he intended to purchase. Weatherford is located about 40 miles west of Fort Worth, Texas, and has a population of 25,000. The distance between Omaha and Weatherford is 664 miles, which is about a 10-hour drive.

Stephanie's father explained that the business he intended to buy was not only a boarding business, but also a grooming and breeding business, with a residence located on the property. At the time of trial, he had signed contracts to purchase the business and the residence on the same property for $450,000, but the contracts were contingent on Harrison's being able to move to Weatherford. He testified that he wants the dog kennel business to be a family business run by himself, Stephanie's mother, Stephanie, and her brother. He testified Stephanie would be the office manager for the business. He planned to pay her a salary of $40,000 per year, provide retirement benefits, and make health insurance available. He testified that Stephanie and Harrison would initially live in the home located on the property with him and Stephanie's mother. The home had three bedrooms and two bathrooms. He planned to eventually build a separate home on the property for Stephanie and Harrison.

Stephanie's father admitted that neither he nor Stephanie's mother has any experience operating a kennel and that his wife has no experience running any type of business. He has some experience with dogs, in that he has owned and raised a specific breed of dog for 18 years. He also testified that Stephanie does not have any experience operating a business, or any office experience.

Stephanie testified that she lived in a house in La Vista, Nebraska, that she purchased on her own. She testified that she had a state cosmetology license and was working full time cutting hair, making $10 per hour plus tips. She was also

working every other Friday at a restaurant/bar, making $5 per hour plus tips. Her W-2 wage and tax statement from 2014 showed that her gross earnings for the year were $30,222.19. She stated that she does not have a retirement plan with her current employer and that health insurance is available through that employer but she cannot afford it.

She explained that the reason she did not let Weston see Harrison in January 2014 was because Weston was using steroids and she was concerned about Harrison's being around him. Weston admitted that he used steroids in the past, but has not used any since January 2014.

Stephanie testified that she wants to move to Weatherford to better her life for herself and Harrison. She testified that she is not asking to move with Harrison to Weatherford to prevent Harrison from spending time with Weston.

Stephanie testified that in April 2014, she began keeping track of the times Weston exercised his parenting time. Under the temporary order, he had parenting time every other weekend and every Wednesday evening. She testified that between April 2014 and March 9, 2015, he had been late for parenting time at least 9 times and either was a "no-show" or did not keep Harrison overnight about 32 times. She further explained that since January 2015, he had regularly exercised his parenting time as set forth in the temporary order, with the exception of being late at times.

On March 31, 2015, the court entered a decree of paternity finding that Weston was the biological father of Harrison and awarding Stephanie sole legal and sole physical custody of Harrison, subject to Weston's rights of reasonable parenting time. The court denied Stephanie's request to remove Harrison from Nebraska to Texas, finding that she did not prove a legitimate reason to move.

## ASSIGNMENT OF ERROR

Stephanie assigns that the trial court erred in finding that she did not prove she had a legitimate reason to relocate to Texas

and asserts that had the court found she had a legitimate reason to relocate, the evidence supported a finding that the removal to Texas would be in Harrison's best interests.

## STANDARD OF REVIEW

[1] In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012).

## ANALYSIS

*Removal.*

[2,3] Stephanie assigns that the trial court erred in finding that she did not prove she had a legitimate reason to relocate to Texas. The court's "legitimate reason" finding comes from *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), which provides that to prevail on a motion to remove a minor child, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her. *Id.* However, in *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009), we held that Nebraska's removal jurisprudence does not apply to a child born out of wedlock where there has been no prior adjudication addressing child custody or parenting time. However, we noted that in a case where the children's coguardians filed a motion to remove the children to Texas, we had stated, "'[I]f the instant case is determined by the children's best interests, then we can conceive of no good reason why *Farnsworth*

. . . would not be properly included in the analytical framework to determine the children's best interests.'" *Coleman v. Kahler*, 17 Neb. App. at 529, 766 N.W.2d at 150, quoting *In re Interest of Eric O. & Shane O.*, 9 Neb. App. 676, 617 N.W.2d 824 (2000), *disapproved on other grounds, In re Interest of Lakota Z. & Jacob H.*, 282 Neb. 584, 804 N.W.2d 174 (2011). Accordingly, we stated in *Coleman* that we would give some consideration to the *Farnsworth* factors in determining custody based on the children's best interests.

We recently affirmed our holding in *Coleman* that it is appropriate to give some consideration to the *Farnsworth* factors in a case involving an initial custody determination in a paternity action. In *Shandera v. Schultz*, 23 Neb. App. 521, 876 N.W.2d 667 (2016), the mother and father had one child together, and a few months after the child was born, the mother moved to Texas with the child. The father filed a petition to establish paternity and custody. The trial court gave some consideration to the factors set forth in *Farnsworth* in determining the child's best interests and awarded the father custody. On appeal, the mother argued that the trial court erred in doing a complete *Farnsworth* analysis in a case involving an initial custody determination in a paternity action. We concluded that the trial court did not do a complete *Farnsworth* analysis, but, rather, only gave some consideration to the *Farnsworth* factors in determining what was in the child's best interests, which was appropriate based on *Coleman*.

The present case, like *Shandera* and *Coleman*, is an initial custody determination in a paternity action where one parent wants to move out of state with the parties' child. Based on *Shandera* and *Coleman*, it was proper for the trial court to give some consideration to the *Farnsworth* factors, which the trial court did when it addressed whether Stephanie had a legitimate reason to leave the state. However, the court stopped its analysis there because it concluded Stephanie did not have a legitimate reason for removal. We disagree, and find this decision by the trial court to be an abuse of discretion. We

determine, based on our de novo review of the record before us, that Stephanie had a legitimate reason for removal and that when other *Farnsworth* factors are considered in determining what is in Harrison's best interests, Stephanie should have been allowed to move.

[4-6] In regard to a legitimate reason for removal, Stephanie wants to move to Texas with Harrison because her parents are moving and buying a business. Her father wants her to be the office manager of the business and plans to pay her $40,000 per year, which is much more than she was making at her jobs in Nebraska. She will also have retirement benefits and medical insurance. Her father also testified that he plans to have Stephanie and her brother inherit the business. This court has repeatedly held that legitimate employment opportunities for a custodial parent may constitute a legitimate reason for leaving the state. *Dragon v. Dragon*, 21 Neb. App. 228, 838 N.W.2d 56 (2013). We have also stated that such legitimate employment opportunities may constitute a legitimate reason where there is a reasonable expectation of improvement in the career or occupation of the custodial parent, or where the custodial parent's new job includes increased potential for salary advancement. *Id.* We have further held that a firm offer of employment in another state with a flexible schedule in close proximity to the custodial parent's extended family constitutes a legitimate reason for relocation. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

The job in Texas provides a reasonable expectation of improvement in Stephanie's career and includes an increased salary and other benefits. We conclude that Stephanie had a legitimate reason to remove Harrison to Texas. Having so concluded, we will give some consideration to the best interests factors described in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), in determining whether Stephanie should be allowed to move to Texas with Harrison.

[7] Under *Farnsworth*, the trial court evaluates three considerations in determining whether removal to another

jurisdiction is in the child's best interests: (1) each parent's motives for seeking or opposing the move, (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent, and (3) the impact such a move will have on contact between the child and the noncustodial parent. See *Bird v. Bird*, 22 Neb. App. 334, 853 N.W.2d 16 (2014).

[8] In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the child and the parent seeking removal, a court should consider the following factors: (1) the emotional, physical, and developmental needs of the child; (2) the child's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the child and each parent; (7) the strength of the child's ties to the present community and extended family there; (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties; and (9) the living conditions and employment opportunities for the custodial parent, because the best interests of the child are interwoven with the well-being of the custodial parent. See *Farnsworth v. Farnsworth, supra*.

Stephanie testified that she wants to move to Texas because of a job opportunity and to be close to her family. She stated that the move was not to prevent Weston from spending time with Harrison. Weston testified that he opposes the move because he wants to parent Harrison and does not want to miss any time with him while he is growing up. Weston also believes that Stephanie's mother, whom he does not get along with, will be Harrison's primary caregiver if Stephanie moves to Texas.

In regard to Harrison's quality of life, we note that both parties are good parents who love and properly care for Harrison.

Both are capable of meeting his emotional, physical, and developmental needs. Stephanie's income will be enhanced by the move, and the job at the dog kennel business will give her an opportunity she likely would not have in Nebraska. Harrison has extended family from both parents in Nebraska, but because Stephanie's parents are moving too, he will have extended family in Nebraska and Texas.

The evidence seems to indicate that allowing the move would not antagonize hostilities between Stephanie and Weston. Prior to the entry of the protection order (which has now expired), the parties were getting along and communicating well. It will be important for Stephanie's mother not to interfere with the relationship between Weston and Harrison. The record is clear that Weston and Stephanie's mother do not get along and that Weston believes she is too involved with Harrison.

The dissent posits that while Stephanie's new position may have improved both her income and her benefits, "it was in an area in which [she] had no education or training." Thus, the dissent concludes, "her ability to carry out the duties of an office manager is speculative."

[9] On the other hand, Stephanie would be working for a family business where any needed training would be readily available and certainly a generous learning curve would be provided by the owners, her parents. As noted in *Farnsworth v. Farnsworth*, 257 Neb. 242, 253, 597 N.W.2d 592, 600 (1999): "Absent some aggravating circumstance, such as an ulterior motive to frustrate the noncustodial parent's visitation rights, *significant career enrichment is a legitimate motive in and of itself.*" (Emphasis supplied.)

Based on our de novo review of the record before us, we determine that it would be in Harrison's best interests to allow Stephanie to move with him from Nebraska to Texas. Thus, we conclude that the trial court erred in denying Stephanie's request to remove Harrison from Nebraska.

*Cross-Appeal.*

The cover of Weston's brief indicates a cross-appeal, and he alleges that the trial court erred in considering the harassment protection order to deny his request for custody.

[10,11] Under Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), a party filing a cross-appeal must set forth a separate division of the brief prepared in the same manner and under the same rules as the brief of appellant. *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). Thus, the cross-appeal section must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of facts. *Id.* Other than setting forth an assigned error, there is no cross-appeal set forth in a separate division of the brief as required by our court rules. Therefore, we do not consider the merits of Weston's purported cross-appeal.

## CONCLUSION

We conclude that the trial court abused its discretion in denying Stephanie's request to remove Harrison from Nebraska to Texas. Accordingly, we reverse the district court's finding denying Stephanie's request to remove Harrison to Texas and remand the matter to the district court to establish parenting time for Weston that takes into account the distance between the parties.

REVERSED AND REMANDED WITH DIRECTIONS.

RIEDMANN, Judge, dissenting.

I respectfully disagree with the conclusion of the majority that the district court abused its discretion in determining that Stephanie did not have a legitimate reason for removing Harrison from Nebraska. Based on the evidence, the district court concluded that the success of the kennel business and the expectation that Stephanie's career would improve were too speculative to constitute a legitimate reason for removal. Without analysis, the majority simply concludes that because Stephanie's father plans to employ Stephanie in his new venture and because her parents are moving to Texas, her reason

for removal was legitimate and the district court's failure to conclude otherwise was an abuse of discretion.

Based upon my de novo review of the record, and particularly those facts set forth below, I find no abuse of discretion in the trial court's determination that the evidence was too speculative to constitute a legitimate reason for removal and I would affirm the district court's decision.

## STANDARD OF REVIEW

As stated in the dissent in *Schrag v. Spear*, 22 Neb. App. 139, 175, 849 N.W.2d 551, 577 (2014), *reversed on other grounds* 290 Neb. 98, 858 N.W.2d 865 (2015), the standard of review should "significantly control[] the outcome in this case." Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## FACTS

In addition to the facts set forth in the majority opinion, the following are relevant to the analysis of whether the trial court abused its discretion in denying removal: Stephanie's father was employed at one of a utility company's nuclear stations at the time of trial. Like Stephanie, he has no college degree or experience operating a dog kennel, nor does Stephanie's mother. He testified it had "been a dream of [his] for 20 years" to own a dog kennel. And although he had signed a purchase agreement for a kennel in Texas, contingent upon Stephanie's being allowed to remove Harrison, the

Martinez family was not moving to Texas unless Harrison could go. In Stephanie's father's words, "No one is leaving without Harrison."

As to the operation of the business, Stephanie's father testified that he wanted the business to initially be family-run, but stated, "[I]f we're successful and can grow this, I will need help down the road at some point, possibly." Despite his optimism in operating this business, he had a contingency plan, testifying that "if things went south, [he] would go get a job in Weatherford."

The location of the kennel was happenstance; the Martinez family does not have any relatives in the area and had originally considered purchasing a kennel in Colorado.

## ANALYSIS

I agree with the majority that the district court analyzed this case within the proper framework of our case law, first determining custody and then considering whether Stephanie had a legitimate reason for removing Harrison to Texas. I disagree, however, that when the proper standard of review is utilized, the district court abused its discretion in finding no legitimate reason for removal. To be an abuse of discretion, the decision must be based upon untenable or unreasonable reasons or must be "clearly against justice or conscience, reason, and evidence." *Schrag v. Spear*, 290 Neb. at 104-05, 858 N.W.2d at 873.

In *Schrag*, the Nebraska Supreme Court highlighted the importance of our standard of review in relocation cases:

> We have previously observed that parental relocation cases are "among the most complicated and troubling" cases that courts must resolve. This is so because of the competing and often legitimate interests of the parents in proposing or resisting the move, and because courts ultimately have the difficult task of weighing the best interests of the child at issue "which may or may not be consistent with the personal interests of either or both

parents." In these cases, courts are required to balance the noncustodial parent's desire to maintain [his or her] current involvement in the child's life with the custodial parent's chance to embark on a new or better life. It is for this reason that such determinations are matters initially entrusted to the discretion of the trial judge, and the trial judge's determination is to be given deference.

290 Neb. at 105, 858 N.W.2d at 873, quoting *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), and citing *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

The threshold issue with respect to removal is whether the custodial parent had a legitimate reason for the proposed relocation. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). The Nebraska Supreme Court has held that job-related changes may be legitimate reasons for moving where there is a "'"reasonable expectation of improvement in the career or occupation of the custodial parent"'" and where the custodial parent's new job included increased potential for salary advancement. *Jack v. Clinton*, 259 Neb. 198, 205, 609 N.W.2d 328, 333 (2000), quoting *Farnsworth v. Farnsworth, supra*. Where there are career advancement opportunities, a desire to be in close proximity to extended family may also constitute a legitimate reason for removing a minor child. *Jack v. Clinton, supra*.

While the evidence reveals that Stephanie's father intended to employ her in a more lucrative position with better benefits, it was in an area of employment in which Stephanie had no education or training. In prior cases allowing removal based on career advancement, the job opportunities were in the same or related areas of work in which the custodial parent had past experience, education, or training. See, e.g., *Farnsworth v. Farnsworth, supra*; *Jack v. Clinton, supra*; and *Dragon v. Dragon*, 21 Neb. App. 228, 838 N.W.2d 56 (2013). While most employment positions do not guarantee a definite term of employment, they virtually always require that the employee be qualified for the position. Given Stephanie's lack

of managerial skills, her ability to carry out the duties of an office manager is speculative.

Moreover, the job opportunity arises only if Stephanie is allowed to move Harrison to Texas. Her father's purchase agreement is contingent upon the court's allowing Stephanie to remove Harrison. Her father testified that "[n]o one is leaving without Harrison." This means that if removal is denied, Stephanie's father is not buying the business and there is no job for Stephanie. This presents a different scenario than the cases in which removal was allowed based upon a firm employment offer. Therefore, although a $40,000 job with benefits is better than what Stephanie presently has, given the circumstances of the job offer, it was not an abuse of discretion for the district court to find the employment too speculative to be the basis for a legitimate reason for removal.

Aside from Stephanie's lack of training, experience, or education to fulfill the duties of an office manager, the business at which this position is proposed is a new venture for Stephanie's family. No one in her family has any training, experience, or education in operating a dog kennel. This is not a situation in which a custodial parent is being offered a position at an established company in another state. Even Stephanie's father had a contingency plan to "get a job in Weatherford" if "things went south."

In discussing the legitimacy of a custodial parent's motives for relocating, which is part of the "'threshold question'" of whether the parent has a legitimate reason for moving, the Nebraska Supreme Court, in *Schrag v. Spear*, 290 Neb. 98, 107, 858 N.W.2d 865, 874 (2015), found no abuse of discretion in a trial court's determination that relocation was not necessary in order to establish a new living arrangement and support system. The district court's conclusion was based upon the fact that "both of those factors were entirely dependent upon the continuation of her relationship" with a man whom the custodial parent "had known for approximately 1 year." *Id*. at 107, 858 N.W.2d at 875. Affirming the district court's decision

denying removal, the Supreme Court stated that the record clearly reflected that the custodial parent's living arrangements "offered no assurance of stability or permanency for herself or her child." *Id*. at 109, 858 N.W.2d at 876. In essence, the court determined the relationship was too tenuous to support a legitimate reason.

Likewise, in the present case, Stephanie's proposed move is based upon tenuous circumstances. She is accepting a job for which she has no experience, training, or education, with a company whose management also has no experience, training, or education. These are sufficient facts upon which the district court could properly determine that Stephanie's employment opportunities are too speculative to be the bases for a legitimate reason for removal.

Nor is Stephanie's desire to relocate near extended family a legitimate reason for removal, in light of the facts that the Martinez family was still in Nebraska at the time of trial and that Stephanie's father testified the family would not pursue the business opportunity if removal were denied.

Based upon the above facts, the trial court's decision to deny removal because Stephanie did not have a legitimate reason for removal was neither untenable nor unreasonable; nor was it clearly against justice, conscience, reason, or evidence. I would therefore affirm the district court's decision.