Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/04/2018 08:10 AM CDT

Heritage Bank, Trustee of the Charles L.
Gabel Revocable Trust, appellee,
v. James L. Gabel et al.,
appellants.

___ N.W.2d ___

Filed February 9, 2018.    No. S-17-363.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Judgments: Words and Phrases.** According to Neb. Rev. Stat. § 25-1301(1) (Reissue 2016), a judgment is the final determination of the rights of the parties in an action.

3. **Judgments.** A judgment must be sufficiently certain in its terms to be able to be enforced.

Appeal from the District Court for Polk County: Rachel A. Daugherty, Judge. Reversed and remanded for further proceedings.

John C. Hahn, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellants.

Kent E. Rauert and Samuel R. O'Neill, of Svehla Law Offices, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Kelch, J.

## INTRODUCTION

Heritage Bank, as trustee of the Charles L. Gabel Revocable Trust (Trust), brought an action for forcible entry and detainer against James L. Gabel (James), C.J. Land & Cattle, L.P., and MCGFF, LLC (collectively Appellants), after James failed to pay rent on farmland in accordance with a lease agreement. The district court for Polk County granted summary judgment in favor of Heritage Bank, and Appellants now appeal. Upon our review of the record, we discern genuine issues of material fact. Therefore, we reverse, and remand for further proceedings.

## FACTS

Charles L. Gabel (Charles) owned various parcels of farmland in Polk County. He and his son, James, farmed the land together for at least 30 years.

On February 8, 2008, Charles established the Trust and transferred the farmland to the Trust. The Trust named Charles as the initial trustee and James as the successor trustee. Charles, as trustee, leased the farmland to C.J. Land & Cattle, of which James was the general partner, for a term of 20 years. Payment due under the lease was 30 percent of the crops produced on the land each year, to be delivered no later than March 1 of the following year.

On May 5, 2010, C.J. Land & Cattle, through James as its general partner, assigned all of its rights under the lease to MCGFF. On March 1, 2011, the Trust leased the land directly to MCGFF, under the same terms as the prior lease, including the 30-percent crop-share provision.

On September 11, 2012, Charles resigned as trustee. Although not specifically appointed, James assumed the duties as successor trustee. On May 1, 2013, James, as a member of MCGFF, assigned all of MCGFF's rights under the March 1, 2011, lease to himself. As a result, James is the current tenant of the land.

Charles amended the Trust various times before his death. As his health began to decline, proceedings were initiated in the county court for Cass County for a guardianship and conservatorship for Charles. In addition, a separate proceeding was brought in Cass County by James for administration of the Trust. On August 26, 2014, Heritage Bank, by stipulation of James, was appointed as trustee through the proceedings for administration of the Trust.

Charles died on November 18, 2015. James later filed a petition to determine the validity of a subsequent Trust of Charles in the county court for Cass County. The county court found that it lacked jurisdiction to hear the petition, because the subsequent Trust was associated with a will contest pending before the district court for Cass County. At the time of this appeal, that proceeding was apparently still ongoing.

Meanwhile, James failed to deliver the 2015 crop payment to Heritage Bank by March 1, 2016. Rather than providing written notice of default, Heritage Bank served James with a written notice to vacate the property within 3 days. When James failed to do so, Heritage Bank filed an amended complaint against James, C.J. Land & Cattle, and MCGFF. The first cause of action alleged that the leases and assignments were invalid for various reasons, while the second cause of action was for forcible entry and detainer. It alleged that even if the leases and assignments were valid, James had not paid rent to the Trust as required by the terms of the lease and was in unlawful possession of the land following receipt of the notice to vacate. It sought restitution of the land to the Trust, as well as damages and costs. Appellants answered that James was the rightful trustee and that thus, Heritage Bank lacked standing to bring this action, particularly following Charles' death.

On January 20, 2017, Heritage Bank filed a motion for summary judgment as to its second cause of action for forcible entry and detainer. The evidence presented at the hearing showed that James had failed to deliver the Trust's share of

the 2015 crops by March 1, 2016. The president of Heritage Bank provided an affidavit stating that he made numerous demands to James and his attorneys, both in person and via email, including several communications instructing them where the crops were to be delivered.

In his affidavit, James stated that he was willing and able to deliver the crops as required under the lease at all times, but was awaiting instruction on where to deliver them. James further stated that under terms of the lease, the tenant must be given a written notice of default for unpaid rents and a reasonable amount of time to correct any such default, neither of which was given to him. The evidence showed that James eventually deposited two checks with the clerk of the Polk County Court containing 30 percent of the 2015 crop proceeds. However, those checks were not delivered to that court until October 27, 2016. James stated that any default was cured by delivery of the checks and that any harm suffered by the Trust was due to Heritage Bank's failure as trustee.

On March 13, 2017, the district court issued a written order granting summary judgment in favor of Heritage Bank. It concluded that Heritage Bank was the trustee, because it was the only entity that had been issued letters of trustee. It noted that although James believed he should have been appointed trustee pursuant to the Trust documents, he had not been so appointed and the proceeding to determine the validity of the various Trust documents was still ongoing. It found the undisputed evidence established that Appellants did not deliver the 2015 crop payment to the trustee by March 1, 2016. Regarding the required notice of default, the district court found that Appellants had notice they were not in compliance with the terms of the lease after James was served with a notice to vacate, a complaint, and an amended complaint. The district court found that the defect was not cured within a reasonable amount of time, because Appellants did not submit checks for the crop proceeds to the clerk of the district court

until October 27, 2016, which was approximately 6 months after he was served in this matter.

The granting of the judgment on the second cause of action implicitly dismissed the first cause of action, the dismissal of which was later formalized by the parties. Appellants have now filed this appeal.

## ASSIGNMENTS OF ERROR

Appellants assign that the district court erred in finding that there was no genuine issue of material fact as to (1) whether or not Heritage Bank is the proper trustee and the real party in interest, (2) whether or not James breached the lease agreement by failing to deliver the trust crops on time, (3) whether or not Heritage Bank complied with the lease agreement, and (4) whether or not James cured any breach of the lease agreement within a reasonable time.

## STANDARD OF REVIEW

[1] We will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *O'Brien v. Cessna Aircraft Co., ante* p. 109, 903 N.W.2d 432 (2017).

## ANALYSIS

Before proceeding with the assigned errors, we note that the order of the district court stated in conclusion that the motion for summary judgment was sustained, but it did not set forth any further recitation as to what the order granted as a judgment. One would need to view both the motion for summary judgment and the amended complaint in conjunction with the court's order to determine the relief granted.

[2,3] Our concern with this type of order is twofold. First, Neb. Rev. Stat. § 25-1301(1) (Reissue 2016) states, "A judgment is the final determination of the rights of the parties in an

action." Second, the general rule of law is that a judgment must be sufficiently certain in its terms to be able to be enforced. *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). The judgment must be in such a form that a clerk is able to issue an execution upon it which an officer will be able to execute without requiring external proof and another hearing. *Id.* Here, the order simply stated, "The [m]otion for [s]ummary [j]udgment is [s]ustained." It is difficult to find that this order fully determined the rights of the parties without further defining the judgment granted and that a clerk could issue an execution without having to make his or her own determination of what the order entailed. We urge trial courts to fully set forth the exact judgment being granted so that litigants, clerks, and sheriffs are able to proceed without any additional inquiry. Nonetheless, since the remaining issues in the instant case may arise on remand, we shall proceed with the analysis, assuming without deciding that the order actually granted the forcible entry and detainer judgment sought.

Appellants initially claim that the district court erred in finding that there is no issue of material fact as to whether or not Heritage Bank is the proper trustee of the Trust and the real party in interest. Appellants explain this position in their brief:

Since Charles' death Heritage [Bank] has continued to act as though it is the Trustee based on the August 26, 2014 Appointment. The Appellants argue that this has been improper and that the appointment of Heritage [Bank] as Conservator and Trustee only applied prior to Charles' death. Upon the death of Charles, the Trust became irrevocable and the Successor Trustee named therein, James, became trustee. . . . The death of Charles created a vacancy in trusteeship. *See* Neb. Rev. Stat. §30-3860(a)(5). That vacancy should have been filled by James, the person designated to serve as successor trustee according to the Trust. *See* Neb. Rev. Stat. §30-3860(c).

Brief for appellant at 13.

However, the record presented to this court reflects that James initiated an action to administer the Trust in the county court for Cass County. During the pendency of the trust administration proceeding, James stipulated to the appointment of Heritage Bank as trustee. The order following the stipulation is not in the record before us, but the record does contain the letters of trustee issued to Heritage Bank on October 7, 2014, naming it as trustee prior to Charles' death. Further, the record does not contain any entry whereby Heritage Bank was removed as trustee.

In this instance, Charles' death does not control whether Heritage Bank is the trustee. The conservatorship and trust administration were docketed separately and are two separate proceedings. One is to determine whether a conservator is needed over the business affairs of an alleged incapacitated person, and the other action is a request for the county court to administer a trust. Even if the conservatorship terminated upon the death of Charles, Heritage Bank was the court-appointed trustee prior to his death and, as a separate legal banking entity, it continued as such after his death, absent removal by order of the court. Consequently, the record before this court supports the district court's finding that Heritage Bank was the trustee and had standing to bring this action. Appellants' assignment of error on this issue has no merit.

Appellants' remaining assignments of error are intertwined and shall be addressed together. Appellants contend that the district court erred in finding that there is no issue of material fact as to whether James breached the lease agreement by failing to deliver the Trust crops on time, whether Heritage Bank complied with the lease agreement, and whether James cured any breach of the lease agreement within a reasonable time.

First, Appellants claim that the evidence is in dispute as to whether James was properly directed concerning a location for crop delivery and, therefore, could not timely deliver the crops. They point to the first paragraph of the lease, which

states in part that the agreed payment was "30% of the crops produced on said real estate on an annual basis delivered at Tenant's expense to an elevator within 15 miles of the farms as Owner shall direct." James, by affidavit, stated that he requested a delivery location from Heritage Bank but that Heritage Bank failed to provide a delivery site. In countering this, Heritage Bank points to an exhibit which it claims sets forth that numerous demands were made for delivery of the crops to a location within 15 miles from the leased property. However, that exhibit, an affidavit of the president of Heritage Bank, sets forth only that "numerous demands" for delivery of the crops were made on James but does not disclose where Heritage directed the delivery location to occur. Thus, the record contains conflicting evidence concerning whether Heritage complied with the lease.

Next, Appellants claim that Heritage Bank never provided James with a notice of default, as required by the lease. They argue that such notice would have allowed James 30 days to cure the alleged breach. Heritage Bank contends that its requests for delivery of the crops and the notice to vacate, along with service of the amended complaint, acted as sufficient notice of default. The district court agreed.

The lease agreement states, in relevant part:

> In the event Lessee fails to make the payment of rent or if default is made in the performance of any other term or condition thereof by Lessee, the lease, at the option of Lessor, shall terminate and be forfeited and Lessor may re-enter the premises and remove all persons in possession therefom. Lessee shall be given written notice of any such default or breach and forfeiture of said lease shall not result if, within 30 days of such written notice, Lessee has corrected the default or has taken action reasonably likely to correct this default within a reasonable time thereafter.

The plain language of the lease required Heritage Bank to provide written notice of the default or breach to James which,

in turn, would allow him 30 days to cure. The title of a particular document forwarded to James does not control whether he was given the proper notice. Rather, we must review the content of each document sent to James to determine whether he received proper notice. Here, the terms of the lease that James allegedly breached were not specifically set forth within the notice to vacate. Further, the record does not contain any evidence that Heritage Bank set forth the alleged breaches in any other written communications. That is, there is no evidence that James had any way to cure those breaches within 30 days as allowed by the lease. Further, any notice of the alleged breaches given to James by way of service of the complaint would not allow James adequate time to cure, since litigation of the matter had already commenced. Nor would the district court's order to pay the crop proceeds into that court constitute a notice of default and right to cure. Either the parties complied with the terms of the lease prior to the court action or they did not. Even if James had paid the crop proceeds into the district court within 30 days of the court order, that would not have barred Heritage Bank from proceeding with the forcible entry and detainer action.

Accordingly, upon our review of the record, we conclude that genuine issues of material fact precluded summary judgment in this instance. See *O'Brien v. Cessna Aircraft Co., ante* p. 109, 903 N.W.2d 432 (2017).

## CONCLUSION

The judgment of the district court is reversed, and the matter is remanded for further proceedings.

Reversed and remanded for
further proceedings.

Wright, J., not participating.