Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/17/2021 08:09 AM CST

Preserve the Sandhills, LLC, et al., appellants
and cross-appellees, v. Cherry County,
Nebraska, et al., appellees, and BSH
Kilgore, LLC, and Bluestem
Sandhills, LLC, appellees
and cross-appellants.

___ N.W.2d ___

Filed September 24, 2021.    No. S-20-726.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not
   involve a factual dispute is determined by an appellate court as a matter
   of law, which requires the appellate court to reach a conclusion indepen-
   dent of the lower court's decision.
2. **Statutes: Appeal and Error.** Statutory interpretation is a question of
   law, which an appellate court resolves independently of the trial court.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues
   presented for review, it is the duty of an appellate court to determine
   whether it has jurisdiction over the matter before it.
4. ____: ____. Where a lower court lacks subject matter jurisdiction to
   adjudicate the merits of a claim, issue, or question, an appellate court
   also lacks the power to determine the merits of the claim, issue, or ques-
   tion presented to the lower court.
5. **Statutes: Appeal and Error.** The right of appeal in this state is purely
   statutory; unless a statute provides for an appeal from the decision of a
   quasi-judicial tribunal, such right does not exist.
6. ____: ____. Statutory language is to be given its plain and ordinary
   meaning, and an appellate court will not resort to interpretation to
   ascertain the meaning of statutory words which are plain, direct, and
   unambiguous.
7. **Statutes: Legislature: Intent.** In construing a statute, a court must
   determine and give effect to the purpose and intent of the Legislature
   as ascertained from the entire language of the statute considered in its
   plain, ordinary, and popular sense.

8. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

9. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court can examine an act's legislative history if a statute is ambiguous or requires interpretation.

10. **Governmental Subdivisions: Counties: Statutes: Words and Phrases: Appeal and Error.** The plain meaning of the term "decision" in Neb. Rev. Stat. § 23-114.01(5) (Reissue 2012), in the context of the entire statute, is a decision to grant, deny, or partially grant and partially deny a conditional use permit.

11. **Governmental Subdivisions: Counties: Appeal and Error.** On appeal, a court may look through form to substance to determine whether a county board granted, denied, or partially granted and partially denied a conditional use permit.

12. **Appeal and Error.** A lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

13. ____. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Cherry County: Mark D. Kozisek, Judge. Appeal dismissed.

Jason M. Bruno, Diana J. Vogt, Robert S. Sherrets, and Thomas G. Schumacher, of Sherrets, Bruno & Vogt, L.L.C., for appellants.

Eric A. Scott, Cherry County Attorney, and David S. Houghton and Justin D. Eichmann, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellees Cherry County and Cherry County Board of Commissioners.

Steven G. Ranum and Richard A. DeWitt, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellee Cherry County Wind, L.L.C.

Steven D. Davidson and Spencer R. Murphy, of Baird Holm, L.L.P., for appellees BSH Kilgore, L.L.C., and Bluestem Sandhills, L.L.C.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ., and WEIMER, District Judge.

CASSEL, J.

## I. INTRODUCTION

After the opponents of a wind turbine project appealed a county board's grant of a conditional use permit (CUP) and while the appeal was pending, a proponent sought and obtained from the board an extension of time to complete the project. The opponents then attempted to appeal from the extension. The district court dismissed the second appeal for lack of jurisdiction. The opponents appeal that dismissal, contending that Neb. Rev. Stat. § 23-114.01 (Reissue 2012) confers a right of appeal from any action regarding a CUP, no matter how incidental or preliminary. Because it does not, we lack jurisdiction and dismiss their appeal and do not reach a proponent's cross-appeal.

## II. BACKGROUND

In 2019, the Cherry County Board of Commissioners (the Board) granted BSH Kilgore, LLC (BSH), a CUP for the development of a commercial wind turbine operation in Cherry County, Nebraska. Less than a year later and while an appeal from the Board's action granting the CUP was pending in the district court, the Board granted BSH a 4-year extension to build the operation.

Preserve the Sandhills, LLC, and a number of individual Cherry County citizens opposing the project (collectively PTS) filed a "Complaint and Petition on Appeal" in the district court, challenging the Board's action granting BSH's extension. In addition to Cherry County, the Board, and BSH, the complaint named Cherry County Wind, LLC, and Bluestem Sandhills, LLC (Bluestem), as defendants. According to the complaint, Cherry County Wind and Bluestem were "involved in the applications to the Board for the CUP."

In the complaint, PTS asked for a trial de novo pursuant to § 23-114.01 and Neb. Rev. Stat. § 25-1937 (Reissue 2016),

a statute which provides an appeal procedure applicable where a statute confers a right of appeal without specifying a procedure. PTS never filed a petition in error in the district court or requested that the court convert its appeal into a petition in error.

Cherry County Wind filed a motion to dismiss for lack of standing and failure to state a claim, and it asserted that it was improperly joined. BSH and Bluestem filed a similar motion. This was followed by a motion to dismiss filed by Cherry County and the Board.

After holding a telephonic hearing regarding the motions and soliciting the parties' briefs on the issue of jurisdiction, the court dismissed PTS' appeal on the basis that it lacked jurisdiction. The court found that an appeal for a trial de novo in that court is limited to the grant or denial of a CUP and that any other decisions regarding a CUP are subject to review only through petition in error.

The court explained that ruling otherwise would allow every tangential decision, such as continuations of hearings, limitations on the number of persons testifying, and limits on the time and scope of testimony, to be afforded de novo review. The court emphasized that it was not making a finding that the grant of an extension of the CUP was a final order but only that an appeal under § 25-1937 was strictly limited to orders granting or denying a CUP.

PTS filed a timely appeal. BSH and Bluestem filed a cross-appeal. Although the extent of Bluestem's participation in the cross-appeal is not entirely clear, we need not resolve the ambiguity. We moved the case to our docket.[1] We later ordered the parties to file supplemental briefs, which we have considered, regarding two aspects of jurisdiction.

### III. ASSIGNMENTS OF ERROR

PTS' appeal assigns that the district court erred in (1) concluding that "PTS was not entitled to a de novo review of

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

the county board's decision to extend the time to perform a conditional use" and (2) dismissing the case "because it did not agree that the standard of review requested by PTS was appropriate."

The cross-appeal assigns that the district court erred in failing to dismiss PTS' appeal "for the separate and independent reason that [PTS] failed to state a plausible claim upon which relief can be granted."

## IV. STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[2]

[2] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[3]

## V. ANALYSIS

### 1. Appeal

#### (a) Jurisdiction

[3-5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[4] Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[5] The right of appeal in this state is purely statutory; unless a statute provides for an appeal from the decision of a quasi-judicial tribunal, such right does not exist.[6]

---

[2] *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021).

[3] *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021).

[4] *Butler Cty. Landfill v. Butler Cty. Bd. of Supervisors*, 299 Neb. 422, 908 N.W.2d 661 (2018).

[5] *Id.*

[6] *Champion v. Hall County, supra* note 2.

Relying upon the third sentence of § 23-114.01(5), PTS argues that the Legislature has conferred a right to appeal "a decision by the . . . county board of commissioners . . . regarding a [CUP]" to the district court. PTS contends that the Board's extension constitutes an appealable "decision" under § 23-114.01. Further, it argues, § 25-1937 allows for a party appealing under § 23-114.01(5) to receive a trial de novo in the district court.[7]

BSH and Bluestem argue that the plain language of the statute does not extend its subject matter beyond granting or denying a CUP. It follows, they argue, that the corresponding appeal right provided in the statute is of equal scope. Cherry County, the Board, and Cherry County Wind make similar arguments.

Thus, to decide whether we have jurisdiction of this appeal, we must determine whether, under the circumstances presented here, the extension qualified as a "decision" under § 23-114.01(5). This requires statutory interpretation.

[6-9] Rules regarding statutory interpretation are well known.[8] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[9] In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[10] It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[11] An appellate court can examine an act's legislative history if a statute is ambiguous or requires

---

[7] See *In re Application of Olmer*, 275 Neb. 852, 752 N.W.2d 124 (2008).

[8] *In re Adoption of Yasmin S., supra* note 3.

[9] *Id.*

[10] *Id.*

[11] *Id.*

interpretation.[12] With these principles in mind, we turn to the language of § 23-114.01(5), viewed in the context of the entire statute.

We now quote § 23-114.01 at length, striving to retain the meaning of the entire statute without losing sight of the most pertinent parts. We have italicized key language for emphasis. Section 23-114.01 provides:

> (1) In order to avail itself of the powers conferred by section 23-114, the county board shall appoint a planning commission to be known as the county planning commission. [Membership requirements, terms of office, removal of members, filling vacancies, and compensation provisions.]
>
> (2) [Duties of commission and requirement of receipt of commission recommendations before certain county board actions.]
>
> (3) [Powers conferred upon planning commissions.]
>
> (4) In all counties in the state, the county planning commission may *grant* conditional uses . . . to property owners for the use of their property if the county board of commissioners . . . has officially and generally authorized the commission to exercise such powers and has approved the standards and procedures the commission adopted for equitably and judiciously granting such conditional uses . . . . The *granting* of a [CUP is limited to uses identified in county zoning regulations].
>
> (5) The power to *grant* conditional uses . . . as set forth in subsection (4) of this section shall be the exclusive authority of the commission, except that the county board of commissioners . . . may choose to retain for itself the power to *grant* conditional uses . . . for those classifications of uses specified in the county zoning regulations. The county board of commissioners . . . may exercise such power if it has formally adopted standards and

---

[12] *State v. McColery*, 301 Neb. 516, 919 N.W.2d 153 (2018).

procedures for granting such conditional uses . . . in a manner that is equitable and which will promote the public interest. *In any county other than a county in which is located a city of the primary class, an appeal of a decision by the county planning commission or county board of commissioners . . . regarding a conditional use . . . shall be made to the district court.* [Appeal specified for county in which is located a city of the primary class.]

(6) Whenever a . . . county board is authorized to *grant* conditional uses . . . pursuant to subsection . . . (5) of this section, the . . . county board shall, *with its decision to grant or deny a* [*CUP*], issue a statement of factual findings arising from the record of proceedings that support the *granting or denial* of the [CUP]. If a county planning commission's role is advisory to the county board, the county planning commission shall submit such statement with its recommendation to the county board as to whether to *approve or deny* a [CUP].[13]

[10] The plain meaning of the term "decision" in § 23-114.01(5), in the context of the entire statute, is a decision to grant, deny, or partially grant and partially deny a CUP. Section 23-114.01 repeatedly and exclusively discusses a county board of commissioners' decisionmaking powers in terms of the grant or denial of a CUP. Section 23-114.01(5) begins by authorizing a county board "to retain for itself the power to *grant* conditional uses . . . for those classifications of uses specified in the county zoning regulations." (Emphasis supplied.) This authorization is preceded in subsection (4) by the specific power conferred upon a planning commission to "*grant* conditional uses."[14] Subsection (6) imposes on a county board, "with its *decision* to *grant or deny* a [CUP]," the obligation to establish a record for any potential appeals by "issu[ing] a statement of factual findings arising from the

---

[13] § 23-114.01 (emphasis supplied).

[14] See § 23-114.01(4) (emphasis supplied).

record of proceedings that support *the granting or denial* of the [CUP]."[15]

PTS would have us read the word "decision" in the third sentence of subsection (5) in isolation. But that invites us to ignore the multiple references to "grant," "granting," "deny," and "denial." We are required to read and construe the entire statute, and we decline PTS' invitation to do otherwise.

To the extent that any hint of ambiguity remains, it is dispelled by the legislative history. The disputed word— "decision"—was added to § 23-114.01(5) in 2004.[16] The language was a last-minute amendment to a much larger comprehensive bill focusing on an overhaul of chapter 77 of the Nebraska Revised Statutes.[17] The senator who offered the amendment explained that the language originated in a separate bill—L.B. 1008—that had not yet been brought to the floor for a vote.[18]

The committee statement for L.B. 1008 explained that a Nebraska Court of Appeals' decision[19] prompted the bill.[20] The Court of Appeals had determined that under the then-existing statutes, a county board of adjustment was the body empowered to decide an appeal from the denial of a CUP by a county board of supervisors.[21] The bill, as amended into the adopted legislation, expressly removed a board of adjustment's authority to "hear and decide appeals regarding conditional use permits . . . which may be *granted* pursuant to section

---

[15] See § 23-114.01(6) (emphasis supplied).

[16] See 2004 Neb. Laws, L.B. 973, § 3.

[17] See *id.*

[18] Floor Debate, L.B. 973, 98th Leg., 2d Sess. 12302-04 (Mar. 24, 2004).

[19] See *Niewohner v. Antelope Cty. Bd. of Adjustment*, 12 Neb. App. 132, 668 N.W.2d 258 (2003) (superseded by statute as stated in *In re Application of Olmer, supra* note 7).

[20] See Committee Statement, L.B. 1008, Urban Affairs Committee, 98th Leg., 2d Sess. 1-2 (Jan. 20, 2004).

[21] See *Niewohner v. Antelope Cty. Bd. of Adjustment, supra* note 19.

23-114.01."[22] This legislative history confirms our understanding of the term "decision" in § 23-114.01(5).

[11] We have concluded that the right to appeal conferred by § 23-114.01(5) applies only to decisions granting, denying, or partially granting and partially denying a CUP. However, a county board cannot circumvent an appeal by labeling or recasting an action's form contrary to its substance. On appeal, a court may look through form to substance to determine whether a county board granted, denied, or partially granted and partially denied a CUP.[23]

In the unusual circumstances presented in this appeal, where the Board's earlier decision to grant a CUP was appealed to the district court and remained undisposed by that court, the Board's decision to extend the time for performance cannot be said to grant or deny a CUP. The extension had no effect upon the substance of the use of the real estate—if the appeal now pending in the district court overturns the CUP, the use will not be permitted; if that appeal upholds the CUP, the use of the real estate will not be affected.

Under these circumstances, the district court lacked jurisdiction of the second appeal. Because that court lacked jurisdiction, we also lack jurisdiction.[24] We express no opinion regarding the power of the Board to grant an extension of a CUP while an appeal of its initial decision to grant the CUP was pending in the district court.

(b) Petition in Error

PTS also assigns that "[i]t was an error for the district court to dismiss the case because it did not agree that the standard of review requested by PTS was appropriate." PTS uses this

---

[22] See 2004 Neb. Laws, L.B. 973, § 4 (emphasis supplied).

[23] See, generally, *Prigge v. Johns*, 186 Neb. 761, 186 N.W.2d 497 (1971); *Loskill v. Board of Equalization*, 186 Neb. 707, 185 N.W.2d 852 (1971).

[24] See *Federal Nat. Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014).

artful articulation to argue that the court erred by not converting its "Complaint and Petition on Appeal," which sought de novo review under §§ 23-114.01 and 25-1937, into a petition in error under Neb. Rev. Stat. § 25-1901 (Reissue 2016).

But PTS chose to seek review using §§ 23-114.01 and 25-1937, and two principles defeat its attempt to "change horses" on appeal.

First, as we explained in *In re Application of Olmer*,[25] a court must respect an appellant's chosen method of appeal. There, we concluded that the district court erred in converting an appeal from a denial of a CUP, taken pursuant to §§ 23-114.01 and 25-1937, into a petition in error. Here, PTS, having made the choice of its route using §§ 23-114.01 and 25-1937, must live with the consequences that follow.

[12] Second, a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[26] PTS never filed a petition in error in the district court. It never requested the court to treat its complaint as a petition in error. Only on appeal to this court does it attempt to make this change. Because the district court lacked jurisdiction of PTS' chosen route, we lack jurisdiction to consider whether a petition in error was available, and we express no opinion on that question.

We recognize that the provision of § 25-1937 requiring a trial de novo in the district court is a historical anomaly. Section 25-1937 was first adopted in 1963.[27] Then, as now, it specified that "the procedure for appeal to the district court shall be the same as for appeals from the county court to the district court in civil actions."[28] At that time, all appeals from county court in civil cases were taken to the district court

---

[25] *In re Application of Olmer, supra* note 7.

[26] *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015).

[27] See 1963 Neb. Laws, ch. 138, § 1, p. 515.

[28] See § 25-1937 (Reissue 1964).

for a true trial de novo.[29] Thus, at that time, the second sentence of § 25-1937 was entirely consistent with appeals from county court to district court. Now, as a consequence of changes made over the last 40 years, on appeal from the county court in a civil case, a district court reviews the case for "error appearing on the record made in the county court."[30] Nevertheless, the provision in § 25-1937 for trial de novo continues. Whether it should do so is a matter for the Legislature.

### 2. CROSS-APPEAL

[13] The cross-appeal was conditioned upon this court finding that it has jurisdiction of the appeal. Because we do not, it is unnecessary for us to address the cross-appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[31]

### VI. CONCLUSION

We lack jurisdiction to hear this appeal. Therefore, we dismiss it.

APPEAL DISMISSED.

MILLER-LERMAN, J., not participating.

---

[29] See, Neb. Rev. Stat. § 24-544 (Reissue 1956) (in county courts, appeals in civil actions are taken "in the manner as provided by law in cases tried and determined by [justice courts]"); Neb. Rev. Stat. § 27-1305 (Reissue 1956) (in justice courts, appeals "shall proceed, in all respects, in the same manner as though the action had been originally instituted" in district court); *Guaranty Fund Commission v. Teichmeier*, 119 Neb. 387, 229 N.W. 121 (1930) (explaining distinction between appeals from county and justice courts to district court and appeals from district court to Nebraska Supreme Court).

[30] See Neb. Rev. Stat. § 25-2733 (Reissue 2016).

[31] *Guenther v. Walnut Grove Hillside Condo. Regime No. 3*, 309 Neb. 655, 961 N.W.2d 825 (2021).