Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/03/2023 09:05 AM CST

Preserve the Sandhills, LLC, et al.,
appellants, v. Cherry County,
Nebraska, et al., appellees.

\_\_\_ N.W.2d \_\_\_

Filed March 3, 2023.    No. S-22-025.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.

2. \_\_\_\_: \_\_\_\_. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, even where no party has raised the issue.

3. \_\_\_\_: \_\_\_\_. An appellate court does not acquire jurisdiction over an appeal if a party fails to properly perfect it.

4. **Constitutional Law: Statutes: Jurisdiction: Time: Appeal and Error.** The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal.

5. **Statutes: Appeal and Error.** The right of appeal in this state is purely statutory; unless a statute provides for an appeal from the decision of a quasi-judicial tribunal, such right does not exist.

6. **Political Subdivisions: Appeal and Error.** One who seeks to appeal from a decision granting or denying a conditional use permit has two statutory options: filing a petition in error under Neb. Rev. Stat. § 25-1901 (Reissue 2016) or filing an appeal under Neb. Rev. Stat. § 23-114.01(5) (Reissue 2022) and the procedure discussed in *In re Application of Olmer,* 275 Neb. 852, 752 N.W.2d 124 (2008).

7. **Political Subdivisions: Jurisdiction: Time: Appeal and Error.** To perfect an appeal from a decision regarding a conditional use permit under Neb. Rev. Stat. §§ 23-114.01(5) (Reissue 2022), 25-1937 (Reissue 2016), and 25-2729(1) (Cum. Supp. 2022), two jurisdictional requirements must be met within 30 days after the decision: (1) a notice of appeal must be filed with the governmental entity that made the

decision or with the county clerk and (2) the required district court docket fee must be deposited with the governmental entity that made the decision or with the county clerk.

8. **Political Subdivisions: Statutes: Time: Words and Phrases.** Generally, when a statute requires that a document must be "filed" with a governmental entity by a particular date, it means the document must be in the possession of the governmental entity for filing within the requisite time period.

9. **Political Subdivisions: Presumptions: Time.** Generally, the file stamp of a governmental entity is afforded a presumption of regularity, and in the absence of evidence to the contrary, the date a document was received by and in the possession of that governmental entity for filing is the date shown by the file stamp.

10. **Jurisdiction: Records: Appeal and Error.** It is the appellant's burden to present a record establishing jurisdiction over the appeal.

Appeal from the District Court for Cherry County: Mark D. Kozisek, Judge. Affirmed.

Jason M. Bruno, Diana J. Vogt, and Thomas G. Schumacher, of Sherrets, Bruno & Vogt, L.L.C., for appellants.

Eric A. Scott, Cherry County Attorney, and David S. Houghton and Justin D. Eichmann, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellees Cherry County, Nebraska, and Cherry County Board of Commissioners.

Steven D. Davidson and Spencer R. Murphy, of Baird Holm, L.L.P., for appellee BSH Kilgore, L.L.C.

Steven G. Ranum and Richard A. DeWitt, of Croker Huck Law Firm, for appellee Cherry County Wind, L.L.C.

Heavican, C.J., Cassel, Stacy, Funke, Papik, Freudenberg, JJ., and Carson, District Judge.

Per Curiam.

In 2019, the Cherry County Board of Commissioners (County Board) granted a conditional use permit (CUP) to

construct a commercial wind turbine project near Kilgore, Nebraska. Parties who opposed the project appealed the CUP decision to the district court for Cherry County pursuant to Neb. Rev. Stat. § 23-114.01(5) (Reissue 2022) and the procedure described by this court in *In re Application of Olmer* (*Olmer*).[1] After litigating in district court for nearly 2 years, the plaintiffs were allowed to amend their complaint to challenge the CUP pursuant to a petition in error.[2] The district court subsequently dismissed the operative amended complaint for lack of jurisdiction, reasoning in part that the record did not show compliance with the statutory requirements for a district court to obtain jurisdiction over a petition in error.

We affirm the dismissal for lack of jurisdiction, but our reasoning differs from that of the district court. Because this matter was initially filed in the district court as a CUP appeal under § 23-114.01(5), we review the statutory procedure and timelines for perfecting such appeals. We ultimately conclude, on this record, that compliance with the jurisdictional requirements has not been shown, and therefore, the district court never acquired jurisdiction over this CUP appeal.

## BACKGROUND

In 2019, BSH Kilgore, LLC (BSH), applied for a CUP to construct and operate commercial grade wind turbines and related facilities in Cherry County near Kilgore. Preserve the Sandhills, LLC (PTS), and Charlene Reiser-McCormick, along with others, opposed issuance of the CUP. The County Board granted BSH's CUP application on October 29.

On November 29, 2019, PTS and Reiser-McCormick filed in the district court for Cherry County what they captioned a "Complaint and Petition on Appeal" brought "pursuant to Neb. Rev. Stat. §§ 23-114.01 and 25-1937 and *In re Olmer*, 275 Neb. 852, 752 N.W.2d 124 (2008)." The complaint named

---

[1] *In re Application of Olmer*, 275 Neb. 852, 752 N.W.2d 124 (2008).

[2] See Neb. Rev. Stat. § 25-1901 (Reissue 2016).

multiple defendants, including the County Board and BSH, and it sought to vacate and invalidate the CUP issued to BSH. After the defendants successfully moved to dismiss this complaint for lack of standing, an amended complaint was filed.

Like the original complaint, the amended complaint was brought "pursuant to Neb. Rev. Stat. §§ 23-114.01 and 25-1937, [and] *In re Olmer*, 275 Neb. 852, 752 N.W.2d 124 (2008)," and it sought to vacate and invalidate the CUP issued to BSH. However, the amended complaint added several new plaintiffs, who were alleged to be the owners of real property in Cherry County near where the wind turbines authorized by the CUP would be constructed. The defendants moved to dismiss the amended complaint on multiple grounds, including lack of standing, but the district court overruled the motion and allowed the CUP appeal to proceed on the amended complaint.

Eventually, the parties filed competing motions for summary judgment and an evidentiary hearing was held. After evidence was adduced, the plaintiffs made an oral motion to amend the operative complaint, explaining they wanted to challenge the validity of the CUP pursuant to a petition in error.[3] The court asked the plaintiffs' counsel, "Are you willing to be bound by that, that you will proceed on the petition in error and will not re-raise the issue of trial de novo?" and counsel responded, "Yes, Your Honor." The court then entered an order granting the oral motion to convert the proceedings to a petition in error and overruling the competing motions for summary judgment.

The plaintiffs then filed a second amended complaint purporting to appeal the validity of the CUP "pursuant to Neb. Rev. Stat. §§ 23-114.01 and 25-1937, *In re Olmer*, 275 Neb. 853, 752 N.W.2d 124 (2008), and, pursuant to this amendment, Neb. Rev. Stat. § 25-1901." After answers were filed, the parties once again filed competing motions for summary

---

[3] See § 25-1901 and Neb. Rev. Stat. §§ 25-1903 to 25-1908 (Reissue 2016).

judgment. An evidentiary hearing was held, and the matter was taken under advisement.

In an order entered November 12, 2021, the district court granted summary judgment in favor of the defendants and dismissed the plaintiffs' second amended complaint with prejudice for lack of jurisdiction. The court's order addressed two ways in which jurisdiction was lacking. First, it reasoned the plaintiffs lacked standing sufficient to confer subject matter jurisdiction on the district court under the second amended complaint. Alternatively, it reasoned the plaintiffs had "abandoned" their CUP appeal pursuant to § 23-114.01(5) and sought to convert the proceedings to a petition in error, but the appellate record did not show compliance with the statutory procedure to give a district court jurisdiction over a petition in error.

The plaintiffs (hereinafter the appellants) filed this appeal, which we moved to our docket on our own motion. After doing so, we issued an order directing the appellants to show cause why the appeal should not be dismissed for failure to present a record demonstrating the CUP appeal was timely perfected in the district court. The appellants filed a response which we discuss later in our analysis, and we reserved ruling on the order to show cause until plenary submission after oral argument.

## ASSIGNMENT OF ERROR

The appellants' brief assigns multiple errors on appeal, but we do not reach any of them. Instead, as we will explain, we conclude the record presented on appeal does not show that PTS and Reiser-McCormick timely perfected their CUP appeal in the district court, and therefore, that court never acquired jurisdiction.

## STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of

law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[4]

## ANALYSIS

[2-4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, even where no party has raised the issue.[5] It is fundamental that an appellate court does not acquire jurisdiction over an appeal if a party fails to properly perfect it.[6] The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal.[7]

[5,6] The right of appeal in this state is purely statutory; unless a statute provides for an appeal from the decision of a quasi-judicial tribunal, such right does not exist.[8] We have recognized that one who seeks to appeal from a decision granting or denying a CUP has two statutory options: filing a petition in error under § 25-1901 or filing an appeal under § 23-114.01(5) and the procedure discussed in *Olmer*.[9] The statutory procedure for conferring jurisdiction on the district court varies depending on which method is selected.[10] Likewise, the nature and

---

[4] *Main St Properties v. City of Bellvue*, 309 Neb. 738, 962 N.W.2d 333 (2021); *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021).

[5] See, *In re Estate of Koetter*, 312 Neb. 549, 980 N.W.2d 376 (2022); *Tegra Corp. v. Boeshart*, 311 Neb. 783, 976 N.W.2d 165 (2022); *In re Interest of Luz P. et al.*, 295 Neb. 814, 891 N.W.2d 651 (2017).

[6] *In re Interest of Luz P. et al., supra* note 5.

[7] *Id*.

[8] *Preserve the Sandhills v. Cherry County*, 310 Neb. 184, 964 N.W.2d 721 (2021); *Champion v. Hall County, supra* note 4.

[9] See *Olmer, supra* note 1. Accord *Preserve the Sandhills, supra* note 8.

[10] Compare §§ 25-1903 to 25-1908 (statutory procedure for perfecting petition in error under § 25-1901), with *Olmer, supra* note 1, and Neb. Rev. Stat. §§ 25-1937 (Reissue 2016) and 25-2729 (Cum. Supp. 2022) (statutory procedure for perfecting CUP appeal under § 23-114.01(5)).

scope of the district court's review varies depending on which method is selected.[11]

We have recognized that courts must respect an appellant's chosen method of appealing a CUP decision,[12] and we have cautioned that when the appellants choose a method they "must live with the consequences that follow."[13] During oral argument before this court, the appellants confirmed that initially they chose to file this CUP appeal pursuant to § 23-114.01(5), § 25-1937, and the *Olmer* procedure; they did not pursue a petition in error.

As such, to determine whether this CUP appeal was timely perfected in the district court, we begin our jurisdictional analysis by reviewing the statutory procedure and timeline for perfecting CUP appeals under § 23-114.01(5), § 25-1937, and the procedure discussed in *Olmer*. We then consider whether the record on appeal establishes compliance with that statutory procedure, and we conclude it does not. Ultimately, we determine the district court never acquired jurisdiction of this CUP appeal, and we therefore affirm the judgment of dismissal for lack of jurisdiction.

Given this dispositional path, we do not address whether there are any circumstances under which an appeal brought under § 23-114.01(5) can be converted into a petition in error under § 25-1901, and we express no opinion on whether these alternative methods for seeking district court review of a CUP decision can be pursued simultaneously.

---

[11] Compare *Olmer, supra* note 1 (holding CUP appeals brought under §§ 23-114.01(5) and 25-1937 require district court to conduct trial de novo on issues made up by pleadings), with *Douglas County v. Archie*, 295 Neb. 674, 687, 891 N.W.2d 93, 103 (2017) (holding district court's review under petition in error is restricted to record made before lower tribunal and court "does not reweigh evidence or make independent findings of fact").

[12] See *Olmer, supra* note 1.

[13] *Preserve the Sandhills, supra* note 8, 310 Neb. at 194, 964 N.W.2d at 728.

### CUP Appeals Under
### § 23-114.01(5)

Section 23-114.01(5) expressly authorizes "an appeal of a decision by the county board of commissioners or supervisors regarding a conditional use" and provides that such appeals "shall be made to the district court." Almost 15 years ago in *Olmer*, we recognized that although § 23-114.01(5) created a statutory right to appeal a CUP decision to the district court, it did not specify the procedure for perfecting such an appeal. In such a circumstance, we turn to § 25-1937, which provides in part:

> When the Legislature enacts a law providing for an appeal without providing the procedure therefor, the procedure for appeal to the district court shall be the same as for appeals from the county court to the district court in civil actions. Trial in the district court shall be de novo upon the issues made up by the pleadings in the district court.

The statutory procedure for appealing a civil action from county court to district court is set out in § 25-2729. Currently, and at the time this CUP appeal was filed in the district court, § 25-2729 provides in relevant part:

> (1) In order to perfect an appeal from the county court, the appealing party shall within thirty days after the entry of the judgment or final order complained of:
>
> (a) File with the clerk of the county court a notice of appeal; and
>
> (b) Deposit with the clerk of the county court a docket fee of the district court for cases originally commenced in district court.
>
> (2) Satisfaction of the requirements of subsection (1) of this section shall perfect the appeal and give the district court jurisdiction of the matter appealed.

In *Olmer*, we acknowledged that the appeal procedure in § 25-2729 was "intended to apply to appeals from county

court and, as a result, cannot be applied literally"[14] to CUP appeals under § 23-114.01(5). That is so because decisions granting or denying CUP applications do not originate in county court. Consequently, *Olmer* held that when bringing a CUP appeal under § 23-114.01(5), the procedural requirements of § 25-2729 must be "drawn by analogy."[15] More specifically, *Olmer* held that when appealing from a CUP decision under § 23-114.01(5), "§ 25-2729(1)(a), in essence, requires that the appealing party file a notice of appeal with the lower tribunal or decisionmaker within 30 days" of the CUP decision.[16]

*Olmer* found the notice of appeal requirement in § 25-2729(1)(a) had been satisfied because the record showed a notice of appeal had been filed with the county commissioners and file stamped by the county clerk within 30 days of the CUP decision. And, without directly addressing how to satisfy the docket fee requirement by analogy, *Olmer* noted that the record sufficiently "establishe[d] that the other requirements for appeal to the district court were met."[17]

More recently, in *Kowalewski v. Madison Cty. Bd. of Comrs.*,[18] we considered whether the required docket fee had been timely deposited in a CUP appeal under § 23-114.01(5). In *Kowalewski*, the district court record contained a notice of appeal that was file stamped by the county clerk 29 days after the CUP was issued. The record also established that when the notice of appeal was filed, the appellants "deposited with the county clerk . . . a check for $82 payable to the Madison County District Court intended to cover the filing fee."[19] At

---

[14] *Olmer, supra* note 1, 275 Neb. at 860, 752 N.W.2d at 130.

[15] *Id*.

[16] *Id*.

[17] *Id*., 275 Neb. at 861, 752 N.W.2d at 130.

[18] *Kowalewski v. Madison Cty. Bd. of Comrs*., 310 Neb. 812, 969 N.W.2d 392 (2022).

[19] *Id*. at 813, 969 N.W.2d at 393.

the time, however, the district court's filing fee was actually $83. The appellants paid an additional $1 to the clerk of the district court 31 days after the CUP decision, and the district court dismissed the CUP appeal for lack of jurisdiction, finding the required docket fee had not been timely deposited. The dismissal was appealed, but we found no error. We noted that payment of the docket fee within 30 days was jurisdictional, and we reasoned that "strict compliance with that requirement"[20] was necessary. Because the full amount of the required docket fee had not been paid within the 30-day appeal period, we agreed the CUP appeal had not been timely perfected in the district court.

[7] *Olmer* and *Kowalewski* demonstrate that to perfect an appeal from a CUP decision under §§ 23-114.01(5), 25-1937, and 25-2729(1), two jurisdictional requirements must be met within 30 days after the decision: (1) a notice of appeal must be filed with the governmental entity that made the CUP decision or with the county clerk and (2) the required district court docket fee must be deposited with the governmental entity that made the CUP decision or with the county clerk.

Applying these jurisdictional requirements here, PTS and Reiser-McCormick were required to (1) file a notice of appeal with either the County Board or the county clerk within 30 days after the October 29, 2019, decision to grant the CUP and (2) deposit the district court docket fee with either the County Board or the county clerk within that same time period.

[8] The parties have not directed us to any statute or regulation setting out the process for filing a notice of appeal with the County Board or the county clerk in Cherry County, and we are aware of none. Generally, when a statute requires that a document must be "filed" with a governmental entity by a particular date, it means the document must "be in the possession of" the governmental entity for filing within the

---

[20] *Id*. at 816, 969 N.W.2d at 395.

requisite time period.[21] The jurisdictional issue here, then, is whether our record establishes that the notice of appeal and the docket fee were in the possession of the County Board or the county clerk for filing within 30 days after the CUP decision was issued.

[9] Generally, the file stamp of a governmental entity is afforded a presumption of regularity, and in the absence of evidence to the contrary, the date a document was received by and in the possession of that governmental entity for filing is the date shown by the file stamp.[22] But here, our jurisdictional review of the appellate record showed no file-stamped notice of appeal and nothing documenting that the required docket fee was deposited with the County Board or the county clerk within 30 days of the CUP decision. Based on these deficiencies, we issued an order directing the appellants to show cause why the appeal should not be dismissed for lack of jurisdiction, and we specifically directed them to demonstrate strict compliance with the requirements of § 25-2729 and the procedure set out in *Olmer* and *Kowalewski*.

## Response to Order
## to Show Cause

The appellants responded to the order to show cause by filing an affidavit signed by their attorney. Counsel's affidavit states in relevant part:

---

[21] *In re App. No. C-4973 of Skrdlant*, 305 Neb. 635, 640, 942 N.W.2d 196, 200 (2020). See, also, *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000) (superseded by statute on other grounds as stated in *In re App. No. C-4973 of Skrdlant, supra* note 21).

[22] See *In re App. No. C-4973 of Skrdlant, supra* note 21. Accord *State v. Hess*, 261 Neb. 368, 378, 622 N.W.2d 891, 901 (2001) (holding "we must presume, in the absence of affirmative evidence to the contrary, that the clerk performed his or her duty and endorsed the notice of appeal with the date it was in fact presented to him or her for filing").

3. I have knowledge of the timing and manner of appeal and prepared the appeal documents and directed the delivery of the appeal documents and appeal fee.

4. At my direction, Appellants hand delivered a Notice of Appeal, a check for $83.00 for the filing fee, a Praecipe for Transcript, and a Praecipe for Bill of Exceptions, to the Clerk of Cherry County, Nebraska, Brittny N. Petersen, at 365 North Main Street, #5, in Valentine, Nebraska on November 12, 2019. All of the documents were accepted by the Clerk's office.

Attached to counsel's affidavit were several exhibits, including (1) a copy of a notice of appeal that was signed by counsel but was neither dated nor file stamped and (2) a copy of a check made payable to the county clerk in the amount of $83, with a memo that read "District Court filing Fee." But counsel's affidavit does not identify who hand delivered the notice of appeal and filing fee check on November 12, 2019, nor does it identify who in "the Clerk's Office" accepted such documents or on what date.

During oral argument before this court, counsel for the appellants generally acknowledged that our record contains no file-stamped notice of appeal, but he argued that *Olmer* created "an obscure procedure that frankly rarely is followed and a lot of the clerks struggle with." Counsel argued that under *Olmer*, it was the county clerk's responsibility to file stamp the notice of appeal and submit it to the district court, and he candidly admitted, "I'm not sure whether or not they did that."

Counsel's affidavit also states that he "requested file-stamped copies of the appeal documents . . . , but for some reason those file-stamped copies were not provided, but instead [were] delivered to the Cherry County Attorney." Our record does not explain why, after learning the county attorney had file-stamped copies, the appellants' counsel was not able to obtain such copies or produce them in response to the order to show

cause. And although some of counsel's averments seem to imply that the conduct of county officials frustrated his efforts to prove the CUP appeal was timely perfected, his affidavit stopped short of making such a claim.

Ultimately, whether or not a file-stamped copy of the notice of appeal exists, the fact remains that no dated or file-stamped notice of appeal appears in our appellate record. And without a file-stamped notice of appeal, there can be no presumption that the notice of appeal was timely filed.[23]

Nor can we conclude that counsel's affidavit established compliance with either of the jurisdictional requirements under § 23-114.01(5), § 25-2729, and our decisions in *Olmer* and *Kowalewski*. Counsel's general averment that on November 12, 2019, he directed unidentified individuals to hand deliver the notice of appeal and the docket fee to the county clerk does not establish that these documents were in the possession of the County Board or the county clerk for filing within 30 days after the CUP decision. Nor does counsel's general averment that "[A]ll of the documents were accepted by the Clerk's office" establish the date on which such documents were accepted. There were no affidavits provided from anyone who claims to have hand delivered the notice of appeal and the docket fee to either the County Board or the county clerk on a particular date, and no affidavits from anyone who claims to have accepted such documents for filing or deposit on behalf of the county clerk or the County Board within the 30-day appeal period.[24]

Finally, counsel's affidavit states that, at his direction, a copy of the notice of appeal was mailed to the county clerk on November 12, 2019, via regular U.S. mail and by certified mail return receipt requested. But "[m]ailing on a certain date

---

[23] See *In re App. No. C-4973 of Skrdlant, supra* note 21.

[24] See *id.* (holding general averments in counsel's affidavit did not establish that document was submitted to Public Service Commission for filing within statutory timeframe).

does not establish possession by the recipient on that date,"[25] so evidence that the notice of appeal was mailed to the county clerk on November 12 does not establish the date on which it was in the county clerk's possession for filing. Moreover, the certified mail receipt that was attached to counsel's affidavit was undated and was signed by someone other than the county clerk, and counsel's affidavit does not contain information about the person who signed the certified mail receipt or that person's relationship, if any, to the county clerk.

[10] It is the appellant's burden to present a record establishing jurisdiction over the appeal,[26] and the show cause order issued by this court specifically directed the appellants to demonstrate compliance with the requirements of § 25-2729 and the procedure set out in *Olmer* and *Kowalewski.* Having carefully reviewed and considered the appellate record and the response to the order to show cause, we conclude the appellants have failed to provide a record establishing strict compliance with the jurisdictional requirements for perfecting a CUP appeal under § 23-114.01(5), § 25-2729, and our decisions in *Olmer* and *Kowalewski*. The record contains no file-stamped notice of appeal that would support a presumption that a notice of appeal was in the possession of the county clerk or the County Board for filing within the 30-day appeal period, and no other evidence establishes such possession. Nor does the appellate record establish that the required district court docket fee was deposited with the County Board or the county clerk within 30 days of the CUP decision. As such, the appellants have failed to show the CUP appeal was timely perfected in the district court. The district court therefore never obtained jurisdiction to review the CUP decision, and we similarly lack jurisdiction over this appeal.[27]

---

[25] *Id*. at 642, 942 N.W.2d at 201.

[26] See *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

[27] See, *Kowalewski, supra* note 18; *In re Estate of Koetter, supra* note 5; *In re Interest of Luz P. et al., supra* note 5.

## CONCLUSION

The record presented on appeal fails to establish that PTS and Reiser-McCormick timely perfected their CUP appeal in the district court. As such, we agree with the district court's conclusion that it lacked jurisdiction over the CUP appeal. We affirm the judgment of dismissal for lack of jurisdiction.

AFFIRMED.

MILLER-LERMAN, J., not participating.

STACY, J., concurring.

I agree with the majority's conclusion that the record presented in this appeal does not establish strict compliance with the jurisdictional requirements for perfecting an appeal to the district court under Neb. Rev. Stat. § 23-114.01(5) (Reissue 2022) and the procedure discussed by this court in *In re Application of Olmer* (*Olmer*).[1] I write separately to suggest that, given the practical limitations of the *Olmer* procedure, those who choose to appeal a conditional use decision under § 23-114.01(5) and *Olmer* should consider taking affirmative steps to document their timely compliance with the jurisdictional requirements for perfecting such appeals.

As the majority points out, when the Legislature created the right to appeal conditional use decisions to the district court under § 23-114.01(5), it did not enact a statutory procedure for perfecting such appeals. Consequently, the appeal procedure this court articulated in *Olmer* was "drawn by analogy"[2] from the statutory requirements in Neb. Rev. Stat. §§ 25-1937 (Reissue 2016) and 25-2729(1) (Cum. Supp. 2022). But the instant appeal, and our recent opinion in *Kowalewski v. Madison Cty. Bd. of Comrs.*,[3] illustrates that the *Olmer* procedure has practical pitfalls of its own.

---

[1] *In re Application of Olmer*, 275 Neb. 852, 752 N.W.2d 124 (2008).

[2] *Id*. at 860, 752 N.W.2d at 130.

[3] *Kowalewski v. Madison Cty. Bd. of Comrs.*, 310 Neb. 812, 969 N.W.2d 392 (2022).

*Olmer* approved of filing the notice of appeal with the county clerk, and *Kowalewski* approved of depositing the required docket fee with the county clerk. But the statutory duties of county clerks

> are primarily focused on keeping the records of county board proceedings. These duties do not include or contemplate accepting court fees or court filings. And . . . there is no statutory procedure authorizing or requiring a county clerk to transmit court filings or docket fees to the clerk of the district court. . . . [T]he reality is there is no case or statute requiring the county clerk to do anything with a notice of appeal, a court docket fee, or court costs. Under the judicial procedure we sanctioned in *Olmer*, appellants must rely on the good will of the county clerk to accept and file stamp their notice of appeal, accept their tendered docket fee, and timely transmit the same to the clerk of the district court.[4]

The *Olmer* procedure has been in place for nearly 15 years, so it is reasonable to expect that most county clerks will be at least familiar with the *Olmer* requirements for perfecting the appeals authorized by § 23-114.01(5). But the instant appeal highlights the danger of assuming that county clerks will reliably perform all of the statutory duties required of clerks of the county court.

Clerks of the county court have "a clear statutory duty and an established statutory procedure to follow when accepting filings and deposits necessary to perfect an appeal to the district court, as well as a commensurate statutory duty to timely transmit the same to the clerk of the district court."[5] But county clerks have no express statutory duty to perform such tasks.[6]

---

[4] *Id.* at 821-22, 969 N.W.2d at 398 (Stacy, J., concurring).

[5] *Id*. at 822-23, 969 N.W.2d at 398 (Stacy, J., concurring, citing Neb. Rev. Stat. §§ 25-2205 (Cum. Supp. 2018), 25-2214, and 25-2731 (Reissue 2016)).

[6] See *Kowalewski, supra* note 3 (Stacy, J., concurring).

This court has repeatedly suggested that this area of the law deserves legislative attention.[7] But unless and until the existing statutory scheme is amended, those choosing to appeal a CUP decision under § 23-114.01(5) and the *Olmer* procedure would be wise to take affirmative steps to carefully document their timely compliance with the jurisdictional requirements for perfecting such an appeal, as well as to ensure the district court record contains such documentation.

---

[7] See, *Preserve the Sandhills v. Cherry County*, 310 Neb. 184, 964 N.W.2d 721 (2021); *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021); *Egan v. County of Lancaster*, 308 Neb. 48, 952 N.W.2d 664 (2020); *Cargill Meat Solutions v. Colfax Cty. Bd. of Equal.*, 281 Neb. 93, 798 N.W.2d 823 (2011); *Olmer, supra* note 1. Accord *Kowalewski, supra* note 3 (Cassel, J., concurring) (Stacy, J., concurring).